In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-3294

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES R. HAYS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:20-cr-30021 — **Sue E. Myerscough**, *Judge.*

_____

ARGUED NOVEMBER 6, 2023 — DECIDED JANUARY 12, 2024

_____

Before FLAUM, SCUDDER, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* After stopping the car Charles Hays
was driving, officers observed Hays's passenger possessing
methamphetamine and a smoking pipe. Officers searched the
car's interior, finding a screwdriver in the center console but
no drugs. An officer then searched under the car's hood and
found methamphetamine in the air filter. The only issue on
appeal is whether the officers had probable cause to search
under the car's hood, including inside the air filter. Because

the automobile exception to the Fourth Amendment's warrant requirement authorizes officers to search a car without a warrant if there is probable cause to believe it contains contraband, including all parts of the car in which there is a fair probability contraband could be concealed, we conclude they did.

I

The following facts are not in dispute. In October 2019, Illinois State Police (ISP) Inspector Evert Nation received information that a male subject known as "Chuck" was distributing methamphetamine in Christian County, Illinois. That same month, ISP agents were surveilling a suspected drug trafficking location in Christian County and observed a man driving a silver Cadillac arrive at the location. The agents determined that the car was registered to Brenda Berger, and the driver, Charles Hays, was her son.

On October 15, 2019, Inspector Nation spotted the Cadillac traveling toward Taylorville, Illinois, and noticed that the vehicle did not have working taillights. Inspector Nation notified the Taylorville police chief, Dwayne Wheeler, of his observation. Chief Wheeler located the Cadillac and, after noticing its illegal tints and observing it cross the center lane twice, initiated a traffic stop with help from Officer Jeremy Alwerdt.

During the stop, the officers identified the driver as Hays, and Officer Alwerdt recognized the passenger, Tamera Wisnasky, from previous encounters and knew she had an outstanding arrest warrant. When questioned, Wisnasky falsely identified herself as Kayla. Officer Alwerdt noticed that Wisnasky was attempting to conceal something in her right hand, which he recognized as a glass pipe used to smoke

methamphetamine. Officer Alwerdt then went to grab Wisnasky's hands, at which time he observed her shove something in her mouth. At Officer Alwerdt's demand, Wisnasky spit out the object, and he identified it as a plastic container carrying suspected methamphetamine. Wisnasky was consequently arrested. Meanwhile, Chief Wheeler directed Hays to get out of the car. During questioning, Hays looked nervous, falsely identified Wisnasky as Kayla, and stated that he had been arrested before and gone to prison for drug possession.

At that point, the officers decided to search the Cadillac. The officers did not find contraband inside the passenger compartment but spotted a screwdriver in the center console, which they knew could be used to hide drugs in traps within vehicles. An officer then searched under the hood, including inside the air filter (a screwdriver is used to open the air filter housing box). In the air filter housing, he found a bag containing methamphetamine.

Following indictment, Hays moved to suppress the evidence obtained during the traffic stop, which the district court denied. Hays pleaded guilty to possession with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), reserving his right to appeal the district court's denial of his motion to suppress. On appeal, Hays argues that the officers did not have probable cause to search under the hood and in the air filter.

II

We review the district court's probable cause determination de novo. *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010).

Under the automobile exception to the Fourth Amendment's warrant requirement, officers may conduct "a warrantless search of a vehicle … so long as there is probable cause to believe it contains contraband or evidence of illegal activity." *United States v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004) (citing *Carroll v. United States*, 267 U.S. 132, 153–56 (1925)). It is well settled that officers can search a car without a warrant where there is probable cause to believe that illegal substances are present. See, e.g., *Wyoming v. Houghton*, 526 U.S. 295, 300–02 (1999) (holding that officers could conduct a warrantless search of a car where they "had probable cause to believe there were illegal drugs in the car"); *United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004) (finding probable cause to search a car, including the trunk, without a warrant where the officer discovered a controlled substance which had fallen out of the defendant's hat). During the traffic stop, officers saw Wisnasky in possession of a pipe for smoking methamphetamine and methamphetamine itself, and officers knew that Hays was recently seen at a known drug trafficking location. True, as Hays argues, the officers observed Hays's passenger, rather than Hays himself, with methamphetamine. But we previously held that under the automobile exception, an officer had the authority to conduct a warrantless search of a car when he discovered the passenger in possession of contraband. *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992) ("Once Trooper Newman discovered that [the passenger] was transporting open, alcoholic liquor … he had probable cause to believe that the car contained additional contraband or evidence."); see *Houghton*, 526 U.S. at 304–05 (rejecting a driver/passenger distinction and noting that a vehicle's driver and passenger "will often be engaged in a common enterprise … and have the same interest in concealing the fruits

or the evidence of their wrongdoing"). Thus, the officers had probable cause to search the car's interior.

Further, officers may search all containers within a car "where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). In other words, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle* and its contents that may conceal the object of the search[,]" *Houghton*, 526 U.S. at 301 (quotation omitted) (emphasis in the original), "including closed compartments, containers, packages, and trunks," *Williams*, 627 F.3d at 251. To justify probable cause for a search, "[a]ll that is required is a fair probability of discovering contraband." *Id.* at 252. This is true "without qualification as to ownership" of the containers searched. *Houghton*, 526 U.S. at 301. Once the officers began searching the car's interior, they discovered a screwdriver in the center console but nothing else to suggest that the screwdriver was a tool of Hays's trade. Based on their experience, the officers knew that the screwdriver could have been used to hide methamphetamine in the vehicle. Thus, considering the circumstances leading up to and during the stop "viewed from the position of a reasonable police officer," *United States v. Hines*, 449 F.3d 808, 815 n.7 (7th Cir. 2006), the officers reasonably found a fair probability that the area under the hood, including the air filter, could contain methamphetamine. See *United States v. Eymann*, 962 F.3d 273, 286 (7th Cir. 2020) ("Probable cause to search a vehicle exists 'if, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quotation omitted); see also *United States v. Patterson*, 65 F.3d 68, 71 (7th Cir. 1995) (finding probable cause to search behind a vehicle's tailgate panel where officers

observed missing screws from the tailgate interior and a drug-sniffing dog alerted to the odor of drugs).

AFFIRMED